**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **United States of America ex rel.** **MICHAEL BANKS,** | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) ) | No. 11 C 5919 |
| **MIKE ATCHISON, Warden, Menard Correctional Center** | ) ) ) ) | |
| Respondent. | ) ) | |

**MEMORANDUM OPINION AND ORDER**[1]

Petitioner Michael Banks brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For all the reasons that follow, his petition is denied.

Following a 2006 jury trial in the Circuit Court of Cook County, Illinois, petitioner was convicted of murder, armed robbery and concealment of a homicidal death. Petitioner acted as his own attorney at trial, but was represented by counsel during pre- and post-trial proceedings, and at sentencing. The trial court sentenced petitioner as an habitual criminal to natural life imprisonment for murder, plus thirty years for armed robbery, and five years for concealment of a homicidal death.

After his appeals, *pro se* habeas corpus complaints, and state postconviction petition were unsuccessful, petitioner filed a *pro*

---

[1] Mike Atchison has replaced Dave Rednour as warden of the Menard Correctional Center and thus is substituted as the respondent in this action.

*se* § 2254 petition, raising four claims: (1) the trial court lacked subject-matter jurisdiction; (2) pre-trial counsel rendered ineffective assistance of counsel; (3) appellate counsel pursued only two issues on direct appeal and excluded nine additional meritorious issues; and (4) the trial court erred in failing to inquire into petitioner's allegations of ineffective assistance of counsel and left him with no choice but to waive counsel and represent himself.

**I.**

The state appellate court's recitation of the facts in this case, which is presumed correct, 28 U.S.C. § 2254(e)(1), is as follows:

> The undisputed evidence at [petitioner's] trial established that on March 24, 2001, [petitioner] fatally stabbed the victim Neal Washington. Thus, the primary issues at trial were whether the victim had been robbed and whether [petitioner] acted in self defense.
>
> The State represented, primarily through the testimony of co-defendant Cuntrenna Wright, that she and [petitioner] fatally stabbed the victim during the course of the robbery. Wright testified that prior to [petitioner's] trial she had pled guilty to armed robbery and aggravated battery in connection with the victim's murder and had agreed to testify truthfully at [petitioner's] trial. Wright further testified that as a result of her guilty plea the pending first degree murder charges against her had been dismissed.
>
> According to Wright, at the time of the stabbing, [petitioner] was her boyfriend and they were living together in an abandoned two-story house located at 7443 South Drexel Avenue. Wright explained that she shared a bedroom with [petitioner] on the first floor of that residence. Wright and [petitioner] also permitted other individuals to stay at the house.

2

In regard to the day of the victim's murder, Wright testified that in the afternoon she went to her friend Karen's house to purchase crack cocaine and smoke it. When Wright arrived, she encountered the victim. Wright observed that the victim appeared to be intoxicated because he smelled of liquor, he could not stand up on his own, and his speech was slurred. Wright testified that she knew the victim by his nickname "Country" and had known him for about four or five years. Wright explained that on previous occasions the victim had purchased narcotics and used them at Karen's house. Wright further testified that the victim occasionally provided her with narcotics in exchange for sex.

According to Wright, the victim was angry because someone inside the house had taken his money, but had failed to provide him with narcotics. The victim told Wright that he wanted to leave with her so they left Karen's house together. Wright and the victim walked to an area near the intersection of Cottage Grove Avenue and 75th Street to purchase narcotics and then the victim gave Wright $20 to purchase narcotics. When the victim gave Wright that money, Wright saw that the victim possessed a large sum of money. Shortly thereafter, Wright got inside a car with an unidentified individual and drove around the block and ultimately purchased narcotics from that individual. Upon Wright's return to the victim's location, Wright saw [petitioner] walking towards the victim. . . . At some point, Wright, [petitioner] and the victim agreed to walk together to the abandoned house on South Drexel Avenue. As they walked, Wright told [petitioner] that the victim "had money on him." Wright maintained that the victim believed that he was going to the house to have sex with her and to use narcotics.

Eventually, Wright, [petitioner], and the victim arrived at the abandoned house and went inside to the first floor. Wright stated that the house's interior temperature was very hot so the victim removed his shirt. As Wright searched the house for a crack pipe, she went to the bedroom and [petitioner] followed her inside that room. Wright testified that as she and [petitioner] were alone in the bedroom they discussed the victim's money and agreed to rob the victim. [Petitioner] left the bedroom to talk to the victim. Thereafter, Wright exited the bedroom and saw [petitioner] and the victim talking near a bar area inside the house. Wright heard the

3

> victim telling [petitioner] about the individuals who had taken the victim's money at Karen's house. At some point, [petitioner] instructed Wright to retrieve a knife from the bedroom, and Wright complied. Wright described the knife as a twelve-inch hunting knife with a blade that was approximately six inches long. Wright testified that when she gave the knife to [petitioner], the victim was standing next to the bar and holding onto the bar because he was intoxicated. Shortly after Wright gave [petitioner] the knife, Wright saw [petitioner] stab the victim in the chest and then the victim fell to the floor. As the victim laid on the floor, Wright heard the victim make "gurgling sounds." Neither Wright not [sic] [petitioner] contacted the police or called for an ambulance after the stabbing.

Ex. A at 2-11. After stabbing the victim, petitioner and Wright took the victim's wallet, which contained $70, and moved the victim's body. According to Wright, the victim did not attempt to hit petitioner or her. On March 27, 2001, after being stopped by the police, Wright told them her account of the murder.

At trial, petitioner testified in his own defense. He admitted that he stabbed the victim, but maintained that he did so only in defense of Wright. According to petitioner, he was inside the house alone when Wright arrived and told him about what had happened at Karen's house. While they were talking, the victim entered the house without permission and threatened to beat Wright, which make petitioner believe that he had to defend her. Petitioner further admitted that he moved the body.

Officer Robert Bartik testified at trial that petitioner initially denied knowing the victim and denied any involvement in the murder. Petitioner later told Bartik that the victim had

4

entered the house, asked to talk to Wright, and shoved Wright. Petitioner claimed he and the victim then struggled with each other until Wright gave him a knife, which petitioner used to stab the victim. During a subsequent interview, petitioner recanted his inculpatory statement and told Bartik that Wright had stabbed the victim and he helped Wright move the body to the basement.

Following closing arguments, the jury found petitioner guilty of first degree murder, armed robbery, and concealment of a homicidal death.

## II.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a habeas petitioner is not entitled to a writ of habeas corpus unless the challenged state court decision is either "contrary to" or "an unreasonable application of" clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *see also Williams v. Taylor*, 529 U.S. 362, 367 (2000). A state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by the Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." *Williams*, 529 U.S. at 404. To demonstrate an "unreasonable application" of clearly established federal law, a habeas petitioner must establish that the state

court unreasonably applied the controlling legal rule to the facts of the case. *Id.* at 407. The state court's application of Supreme Court precedent must be more than incorrect or erroneous. Rather, it must be "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002) (state court decision must lie "well outside the boundaries of permissible differences of opinion").

Before a federal court will consider a habeas corpus petition, a petitioner must satisfy several requirements, including the exhaustion of state remedies and the avoidance of procedural default. Procedural default refers primarily to two situations. The first occurs when the petitioner presents federal claims in his habeas petition that he did not "fairly present" to the state courts, thereby depriving the state courts of the first opportunity to address the claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999). A petitioner's failure to fairly present each habeas claim to every level of the state courts in the time and manner required leads to a default of the claim, thus barring a federal court from reviewing the claim's merits. *Boerckel*, 526 U.S. at 848. The second occurs where the state court bases its judgment on a finding of procedural default or waiver under state law, where such grounds are "independent of the federal question and adequate to support the judgment." *Franklin v. Gilmore*, 188 F.3d 877, 881 (7th Cir. 1999). A federal court, however, may excuse a procedural

6

default if a petitioner can show either cause for the default and actual prejudice as a result of the alleged violation of federal law, or can demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

### A. Trial Court Lacked Subject-Matter Jurisdiction

In his first claim, petitioner argues that the trial court lacked subject matter jurisdiction over his criminal case. Petitioner appears to argue that because he was first charged by complaint filed in the municipal court, and the municipal court had no authority to punish a felony, the superseding indictment did not confer jurisdiction on the circuit court. Pet. at 8-10.

Petitioner's first claim fails because it presents a question solely of Illinois state law. Thus, it is not cognizable on federal habeas review. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Bell v. Mathy*, No. 08 C 5622, 2009 WL 90078, at *2 (N.D. Ill. Jan. 14, 2009) (petitioner's claim that trial court lacked subject matter jurisdiction posed "questions of Illinois state law, rather than the federal Constitutional issues that are cognizable in Section 2254 proceedings."). Moreover, any attempt to turn this issue into a federal question (for example by labeling the matter as implicating due process) would likewise fail because any such

claim would be procedurally defaulted. Petitioner failed to raise this claim before every level of the state courts. *See Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004) (habeas petitioner who failed to assert his claim at each level of state court review has procedurally defaulted his claim).

**B.   Ineffective Assistance of Pre-trial Counsel**

To establish ineffective assistance of counsel, a petitioner must demonstrate: (1) that his attorney's performance was deficient; and (2) that such representation prejudiced his case. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The first prong is satisfied by showing that counsel's performance fell below the "objective standard of reasonableness" guaranteed under the Sixth Amendment. *Barker v. United States*, 7 F.3d 629, 633 (7th Cir. 1993) (quoting *Strickland*, 466 U.S. at 688). To satisfy the *Strickland* prejudice element, a petitioner must demonstrate that it is reasonably likely that, but for his counsel's errors, the decision reached would have been different. *Strickland*, 466 U.S. at 696.

Although petitioner represented himself during the trial, he had counsel during the pre-trial phase. Petitioner alleges that his pre-trial counsel was ineffective because counsel: (1) failed to object to the alleged lack of subject matter jurisdiction; and (2) only visited him once in prison and failed to do "anything at all" on his case for three years. First, petitioner's claim

8

regarding counsel's failure to object to the alleged lack of jurisdiction is procedurally defaulted, as petitioner failed to raise this claim before every level of the state courts. *Boerckel*, 526 U.S. at 845.

Petitioner's second basis, that his pre-trial counsel failed to do "anything at all," must be decided on the merits. The state appellate court rejected this claim on the merits, stating that "we have carefully reviewed the record in this case, counsel's memorandum, and defendant's response" and "agree that an appeal in this case would be without arguable merit." Ex. S at 3.

In support of the state appellate court's conclusion, respondent argues that petitioner cannot meet either prong of *Strickland*. According to respondent, petitioner's pre-trial counsel was not deficient and petitioner cannot show that he was prejudiced. Respondent presents a detailed account of the actions taken by petitioner's pre-trial counsel which include: a May 2001 discovery motion, attendance at numerous status hearings, receipt of a "complete discovery package" from the state, and counsel having advised the trial court that a co-defendant's plea agreement was a "big change in the case" that counsel wished to discuss with petitioner to "see whether it changes our strategy." Further, in October 2004, counsel filed and argued a motion to quash arrest. In November 2004, counsel filed the defense answer to discovery and asked the court to set a date for a jury trial.

9

Comments from the trial judge also indicate that counsel was not ineffective. The trial judge stated that "I don't think there is credible evidence that your attorneys aren't speaking with you, informing you of the case and representing you to the fullest extent of the law." The court went on to opine that petitioner's decision to discharge his attorney was "just a delaying tactic because [he was] not happy with what [he was] hearing."

In his *pro se* reply, petitioner does not address the actions listed above but rather focuses on the fact that his pre-trial counsel did not raise the argument that the state court did not have jurisdiction over his case.[2] As explained above, that basis of his ineffective assistance claim is procedurally defaulted.[3]

---

[2] In addition, petitioner mentions that the state appellate court's ruling was an "unreasonable determination of the facts." Reply at 13. Reading the reply as a whole, however, it appears that petitioner is actually arguing that the state appellate court's legal conclusion was "objectively unreasonable." Because petitioner has pointed to no allegedly erroneous facts found by the state court, I conclude that his reference to an "unreasonable determination of the facts" was inadvertent.

[3] In addition, petitioner makes two undeveloped arguments. In the first, petitioner states that "only when co-defendant became a witness for the State then, and only then, did counsel filed [sic] her "motion to quash arrest and suppress evidence" on October 20, 2004 (nearly two months later (after) co-defendant's plea agreement was made)." Pet. at 5d. In addition, petitioner states that, during an unidentified motion hearing, petitioner informed counsel that the police and Assistant State's Attorneys had falsified the documents within counsel's possession because "he was taken into custody on March 26, 2001 at 10:30 p.m., and was immediately locked inside of their interrogation room until March 29, 2001 at 7:05 p.m." *Id*. at 5e. Petitioner then described how counsel asked the trial judge to amend the pending motion to include the March 26, 2001 date as the date of arrest. With

10

In reply, Petitioner also argues that his counsel:

> abandoned her duty as petitioner's counsel when she was absent from the courtroom on August 21, 2006 when the trial court denied the motion [to reconsider sentence] that was filed by counsel and who intentionally neglected to file a Notice of Appeal. Thus, on August 21, 2006, Petitioner filed or presented his own "Notice of Appeal" before the (due to counsel being absent from the courtroom) trial court who then instructed its Clerk to filed such Notice. Also, once the Appellate Defender's Office was appointed a Notice to the Notice of Appeal was filed to try and cover-up the deficient performance by post-trial counsel.

Reply at 14. These allegations are directed to petitioner's counsel *at sentencing*, not his pre-trial counsel. It is improper for petitioner to raise new claims in his reply brief. However, even if this claim were properly raised, it nonetheless fails. First, with respect to petitioner's allegations regarding counsel's failure to appear for the motion to reconsider petitioner's sentence, petitioner has failed to show how he was prejudiced by counsel's failure to appear. It is undisputed that counsel, in fact, filed the motion with the court, and petitioner has not

---

respect to both of these arguments, petitioner has failed to develop them in any meaningful way. With respect to his argument regarding the timing of the motion to quash, petitioner fails to argue or show how he was prejudiced by this timing. Further, the court has done its best to review the voluminous filings in order to understand petitioner's arguments. Despite this, the significance of petitioner's argument regarding the motion hearing remains uncertain. Once again, petitioner makes no attempt to show how he was prejudiced by these alleged mistakes or errors on counsel's part. Because these arguments are completely undeveloped and unexplained, I find them waived. *See Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011).

explained why there is a reasonable probability that the outcome of the judge's ruling would have been any different had counsel been present for the ruling. In addition, petitioner alleges that counsel intentionally neglected to file a notice of appeal after that motion was denied. Once again, even assuming this was true, petitioner cannot show he was prejudiced by such a failure as petitioner indicated that he himself was permitted to file a notice of appeal.

Given the deference due to counsel and the actions actually taken by pre-trial counsel on petitioner's behalf, I agree with the respondent that the state appellate court's holding was not "objectively unreasonable."

**C.   Ineffective Assistance of Appellate Counsel**

Petitioner claims that his appellate counsel was ineffective for failing to present nine claims on direct appeal. However, petitioner failed to present these nine bases in his PLA to the state supreme court. Thus, this claim is procedurally defaulted. *Boerckel*, 526 U.S. at 845.

**D.   Attorney Waiver Claim**

Petitioner claims that his attorney waiver was involuntary. He alleges that the trial court erred in failing to conduct an inquiry into petitioner's pre-trial allegations of ineffective assistance of counsel. As a result, petitioner contends, he was left with the false choice between going to trial *pro se*, or with

12

incompetent counsel. Further, he argues that the trial court did not conduct a "penetrating examination" into petitioner's understanding of the charges, the statutory offenses included within them, the sentencing range, possible defenses, and "all other facts essential to a broad understanding of the whole matter."

Respondent argues that this claim is procedurally defaulted. According to respondent, while petitioner raised this claim in his *pro se* PLA, he did not raise this precise issue in his postconviction petition. In that petition, petitioner argued that the trial court failed to conduct an adequate inquiry into his *pro se* allegation of ineffective assistance of counsel.

Fair presentment requires the petitioner to have given the state courts a meaningful opportunity to pass upon the substance of the claims he later pursues in federal court. *See Howard v. O'Sullivan*, 185 F.3d 721, 725 (7th Cir. 1999). "[F]or a constitutional claim to be fairly presented to a state court, both the operative facts and the 'controlling legal principles' must be submitted to that court." *Verdin v. O'Leary*, 972 F.2d 1467, 1474 (7th Cir. 1992). "A habeas petitioner must provide the state courts with a fair opportunity to apply constitutional principles and correct any constitutional error committed by the trial court." *Id*. at 1474.

I agree with respondent that the two claims are distinct. In

petitioner's state postconviction claim, the focus was on his assertion that his counsel was ineffective and the trial court's failure to delve deeper into petitioner's complaints. Petitioner presented no argument, and therefore the state court would have had no reason to consider, petitioner's current claim that his waiver of his right to counsel was involuntary. Thus, petitioner's involuntary waiver claim is procedurally defaulted because he failed to raise it before every level of the state courts.

Even if I were to conclude, arguendo, that petitioner's present claim is substantially similar to petitioner's state postconviction claim, petitioner's current claim would be procedurally defaulted for a second reason. The state trial court, in reviewing the postconviction petition, concluded that petitioner's claim – that his due process rights were violated because the trial judge failed to investigate his claims of ineffective counsel – was waived. The court found waiver because petitioner could have, but did not, raised this claim on appeal. Under Illinois law, a defendant must raise a claim on direct appeal where the evidence needed to resolve that claim is present in the record. *See People v. Ivy*, 730 N.E.2d 628, 635 (Ill. App. Ct. 2000). A petitioner waives issues on postconviction review that he could have raised on direct appeal, but did not. *See People v. Mack*, 658 N.E.2d 437, 440 (Ill. 1995). The trial court's determination that petitioner's claim was waived is thus an

14

independent and adequate state ground, and this claim is unreviewable on federal habeas. *See Sturgeon v. Chandler*, 552 F.3d 604, 611 (7th Cir. 2009).

**E.   Exceptions to Procedural Default**

A federal court may excuse a procedural default if a petitioner can show either cause for the default and actual prejudice as a result of the alleged violation of federal law, or can demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. At various points in the reply brief, petitioner argues that his failure to raise the jurisdictional issue before all levels of the state courts (both as its own claim and as the basis for an ineffective assistance of counsel claim) should be excused under the "cause and prejudice" standard because "the full extent of this issue could not be elaborated upon due to the fact that the entire defective due process procedural was fraudulently concealed by the State's Attorney Office and the Public Defender's Office until Ms. Evelyn Baniewicz filed (both) of her *Finley* Motion(s) to withdraw." Reply at 6. Petitioner does not provide any explanation for this assertion. He does not explain what was "fraudulently concealed" from him and why. He further does not explain why he could not have uncovered the basis for his argument back when he was first indicted. Finally, he does not explain why he did not attempt, once the allegedly unknown facts were revealed in the *Finley*

15

motions, to file another state postconviction motion in order to bring the claim properly before the state court.

Finally, with respect to his defaulted claim that his appellate counsel was ineffective for failing to raise nine arguments, petitioner argues that this claim should not be defaulted because the "defendant(s) recognize that the nine (9) asserted issues that the appellate counsel (Ms. Ann E. McCallister) failed to raise on direct appeal are 'dead bang winners' that would have altered the outcome of the appeal process[.]" Because this is not a viable basis for excusing procedural default (and I do not see any other possibilities), petitioner has failed to show "cause and prejudice" for his default.

**F. Certificate of Appealability**

Upon entering an order denying habeas relief, a district court should also determine whether a certificate of appealability is warranted. *See* Habeas Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). To obtain a certificate of appealability, a petitioner must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a district court denies a habeas petition on procedural grounds, without reaching the merits of the underlying constitutional claims, the petitioner must show not only that jurists of reason would find it debatable whether petitioner has alleged at least one

meritorious claim, but also that jurists of reason would find the procedural ruling debatable. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). With respect to my conclusions that petitioner's claims are procedurally defaulted, I do not conclude that those rulings are debatable among jurists of reason. Likewise, with respect to petitioner's ineffective assistance of counsel claim, I do not conclude that jurists of reason would find that conclusion debatable.

### III.

For all the reasons given above, petitioner's petition under 28 U.S.C. § 2254 is denied.

**ENTER ORDER:**

_____

**Elaine E. Bucklo**
United States District Judge

Dated: March 7, 2012